## Moss Jellico Coal Company v. American Railway Express Company.

(Decided March 9, 1923.)

### Appeal from Whitley Circuit Court.

1. Damages—"General Damages" and "Special Damages" Defined.— "General damages" are such as the law presumes from the wrong complained of, and such as naturally and necessarily result therefrom; while "special damages" are such as result from the commission of the wrong, but are not such a necessary result that they will be implied by law, or will be deemed to have been within the contemplation of the parties, and they always grow out of an unusual or peculiar state of facts, which may be known to one of the parties and not to the other.

2. Carriers—Notice Mine Could not Operate Until Machine Parts Received Does Not Warrant Recovery Against Express Company for Lost Profits During Delay.—Notice to an express company that the shipper's mining plant could not be operated without the machinery shipped for repairs, without notice or knowledge that the plant would be operated, except for the lack of that machinery, or that it could be operated at a profit, is insufficient to charge

the express company with liability for the loss of profits from the mine as special damages resulting from the loss of the machinery in shipment.

3. Carriers—Notice of Special Damages Must Bring Peculiar Facts to Knowledge of Other Person.—To make notice of the special circumstances sufficient to authorize recovery from a carrier for special damages, there must be imparted to the carrier information of such facts as will bring home to him the peculiar facts and conditions known to the shipper, which will entail on the carrier a loss not ordinarily within the contemplation of the parties, if the shipment is lost.

STEPHENS & STEELY for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

On and prior to the 18th of October, 1918, appellant was operating a coal mine at Wofford, in Whitley county. The mine was operated almost wholly by electrical appliances and the power was furnished by an electric plant owned by the mining company.

On the morning of the 18th of October it was ascertained that an essential part of the machinery of the electric plant needed repairing, and it was deemed necessary to take this piece of machinery out for that purpose. This necessitated the shutting down of the whole mining operation.

Accordingly, the piece of machinery was taken out and carried to the express office at the station nearby and there shipped to Knoxville, Tennessee, for the purpose of repair. An agent of appellant next morning followed the shipment to Knoxville and found the bill of lading in the express office, but the piece of machinery could not then be found and has never been found.

Some days later when it became apparent this piece could not be located appellant ordered a new piece of machinery in its place. By the time the new piece of machinery had been received and installed appellant's mining operations had been shut down for eighteen days, and this is an action by it against the express company for the value of the lost piece of machinery as well as for the profits claimed to have been lost by it during the eighteen days it was shut down by reason of its loss.

At the close of the evidence the lower court directed a verdict for the plaintiff for the value of the lost machin-

ery, but declined to submit to the jury any instruction authorizing a recovery for the special damages sought, and directed a verdict, as to them, for the defendant.

The plaintiff has appealed, and the only question involved is the correctness of the ruling of the court on the question of special damages.

The 18th day of October, 1918, was on Friday, and it is alleged in the petition plaintiff that day delivered the piece of machinery to defendant, advising it and its agent at the time that one of plaintiff's employes would follow the shipment next morning to Knoxville where previous arrangements had been made to have the same repaired on Saturday the 19th so that the plaintiff's plant could and would resume operations on the following Monday, the 21st; that defendant well knew the purpose for which the piece of machinery was being sent to Knoxville and well knew that plaintiff could not resume its operations and could not operate its plant without the piece of machinery. In an amended petition it was alleged that defendant, through its agent, was familiar with the piece of machinery and knew plaintiff's mine could not operate without same at the time of the delivery, and knew same was a necessary part of the engine and that the engine could not be operated without it, and that the mines of plaintiff could not be operated unless the engine of plaintiff could run, and they notified defendants of these facts. These things were all put in issue.

The evidence of plaintiff's agent Wallace, who delivered the piece of machinery at the station, is that he had no particular talk with the express agent at the time as to what was to be done with the machinery, but he did tell him he wanted it sent that evening so it would get to Knoxville, and that witness was going to follow it the next morning and have it repaired; that he did not remember having any discussion with the express agent as to whether the mine could operate without this machinery but he told him he wanted it sent to Knoxville to be fixed so that they could operate the mine on Monday. The express agent stated, in substance, that Wallace told him the mine could not run until the machinery was fixed and returned, and the statements of these two witnesses constitute the whole evidence of knowledge or notice upon the part of the express company or its agent.

The allegation as to the knowledge of the express company is that it knew plaintiff could not operate its plant without this piece of machinery and knew the same was

a necessary part of the engine; and the allegation of notice in the amendment is in substance that the agent was notified of the same things he had already been charged with having knowledge of. In other words, he was given at the time, notice of the same things of which he already had knowledge.

Because of our opinion that under the evidence no such knowledge or notice has been brought home to the company through its agent as justified the submission of the case to the jury on the question of special damages, we shall not go into a technical analysis of the sufficiency of this pleading on that issue.

General damages are such as the law presumes from the wrong complained of, and such as naturally and necessarily result therefrom; while special damages are such as result from the commission of the wrong, but are not such a necessary result that they will be implied by law, or will be deemed to have been within the contemplation of the parties. Special damages, while resulting from the wrong or the breach of a contract, always grow out of an unusual or peculiar state of facts which may be known to one of the parties, and not to the other.

The leading case on the question of special damages is the English case of Hadley v. Baxendale, 9 Exch. 341. That case has been very generally followed by the courts of America and has been extensively quoted from and approved. There, as in this case, a piece of machinery was delivered to a carrier and the carrier's agent was told that the operation of the mill was stopped on account of this piece of machinery and that same must be promptly delivered and, if necessary, to make a special entry to hasten its delivery; the delivery was delayed, whereby the operation of the mill was further delayed, and the action sought the recovery of special damages in the form of lost profits during this delay. In that case the only circumstances communicated to the defendant at the time were that the article to be shipped was the broken shaft of the mill and that the plaintiffs were the operators of that mill; but the court held that these circumstances did not reasonably show that the profits of the mill must be stopped if there was an unreasonable delay in the delivery of the shaft. In this case the only notice given to the defendant was that the plant could not operate without this piece of machinery; but that does not necessarily imply that the plant would be operated if

that piece of machinery was not out of repair, or that its operation might not be stopped for some other reason. Nor does it imply that even though it necessitated stopping the operation that loss of profits or loss of any kind would result therefrom. There is nothing in the evidence from which it may be inferred that knowledge was had or notice given that the plant was operating at a profit, or that it would operate except for the condition of this piece of machinery. Manufacturing and other plants often cease operations for a time for various causes. Sometimes because they are not making a profit and at other times, even though they are making a profit, to enable them to have a general overhauling of the machinery and the whole plant.

To make such a notice of the special circumstances sufficient to authorize a recovery for special damages there must be imparted to the carrier information of such facts as will bring home to it the peculiar facts and conditions known to the shipper that will entail upon the carrier a loss not ordinarily within the contemplation of the parties, if the shipment is lost or its delivery delayed. In this case the only notice the carrier had was that the coal mining plant could not operate without this piece of machinery or until it was repaired, although it is shown that on the particular day it was shut down there were no cars in which to load the coal produced. That condition, so far as this record discloses, might have continued indefinitely, and for that reason the plant would not have been operated if the machinery had been promptly delivered and repaired.

A carrier in possession of the facts and circumstances which disclose to it a state of case making certain, or even probable, special damages to the shipper, would doubtless make a greater effort to take more care in the prompt delivery of a shipment than it would where it had no reason to expect such damage. There is no presumption that a plant is operating at a profit at any particular time; such things, from their nature, can only be known to those in charge of the business.

Justice and fair dealing require that when you expect to recover from a carrier damages of this nature, which are not apparent upon the face of the transaction, such notice be given as will put the carrier on guard and give it some idea of the additional responsibility involved.

The Baxendale case and the American courts following it have generally applied these general principles and we see no reason to depart from them.

The case of Chapman v. Fargo, 223 N. Y. 32, involved the recovery of special damages for the delay in the shipment of moving picture films and to recover damages for the loss of receipts and profits which would have been realized from the exhibition of the films if their delivery had not been delayed. The carrier knew that the package contained films to be exhibited, and in general terms it was notified that transportation was to be rushed because they were to be exhibited; but it was not notified either that the plaintiff was to be the exhibitor, or that he owned a theater where they were to be exhibited, or that the exhibition was to be on a Christmas holiday or that there had been a special advertisement of the same or that the films were so attractive they could not be readily replaced.

In denying the recovery for special damages the court held that the general notice was not a sufficient basis for a recovery, and that the carrier should have been notified of the particular circumstances and purpose making their prompt delivery important.

"In effect he should have been made aware that plaintiff had made certain plans based upon the arrival of the films at a certain time, and that in case of non-arrival these plans would be destroyed in all probability causing certain damages."

In that case Hutchinson on Carriers is quoted from (section 1369), wherein the rule is stated to be:

"General use to which the article was to be put will not be sufficient to charge him with liability for loss of the use or the profits which would thereby have been made. The special circumstances of the case requiring care or expedition must have been brought to his attention."

The same general doctrine is stated and applied in the Kentucky case of L. & N. Railroad Company v. Mink, 126 Ky. 337.

The knowledge of the agent as alleged being the same as the notice proven to have been given to him, and that notice not being sufficiently explicit as to the facts and circumstances to authorize the assessment of special damages, we think the action of the lower court was proper.

Judgment affirmed.