## American Railway Express Company v. Steinberg.

(Decided March 27, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Carriers—Express Company Unreasonably Delaying Delivery of Salesman's Samples Held Not Liable to Principal for Loss of Anticipated Profits.—Anticipated profits to manufacturer from sales of ladies' suits held too speculative and remote to warrant recovery thereof from express company, which unreasonably delayed delivery of salesman's samples.

2. Damages—Advance Notice of Facts is Necessary to Recovery of Anticipated Profits.—In order to create a liability for loss of anticipated profits, party sought to be held must have been given notice in advance of true situation sufficient to create reasonable contemplation that profits will be lost if contract be violated.

3. Carriers—Notice to Express Company that Package Contained Salesman's Samples Held Insufficient to Sustain Recovery for Loss of Anticipated Profits from Delay in Delivery.—Notice to express company that package delivered to it contained salesman's samples held alone insufficient notice to make it liable for loss of prospective profits arising from delay in delivering such samples.

TRABUE, DOOLAN, HELM & HELM for appellant.

THOMAS C. MAPOTHER and JOSEPH SOLINGER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, Jacob Steinberg, is a manufacturer and wholesale dealer in ladies' suits

and cloaks and conducts his business in the city of Louisville, under the name of J. Steinberg Manufacturing Company. He traveled but one man to solicit and sell his trade, outside of Louisville, and whose name was George C. Watts. On June 11, 1920, plaintiff delivered to appellant and defendant below, at its office in Louisville, a package to be carried and delivered by defendant to plaintiff's representative, Watts, at Indianapolis, Indiana, the package being addressed to him in care of Claypool Hotel. It should have gotten there not later than the next morning, but for some unexplainable reason it did not make its appearance in defendant's office at Indianapolis till some five or six days thereafter. In the meantime, Watts made inquiry as to the arrival of the package and not having received it at the expiration of about three days he left the city, but, in the meantime, sold some goods to a particular class of customers in Indianapolis. After his return to Louisville he went to other territory and did not return to Indianapolis or canvass that or surrounding cities during that season. After some correspondence between plaintiff and defendant as to what should be done with the package, which was intact and uninjured, it was returned to Louisville, addressed to Watts, in care of plaintiff, but neither he nor plaintiff would receive it.

In December, following, this action was brought in the Jefferson circuit court by plaintiff against defendant to recover damages for the delay in delivering the package and in the petition, as amended, it was alleged that it contained nine models of different types of ladies' suits to be used by Watts, plaintiff's representative, in exhibiting them to prospective customers in an effort to effect sales; that defendant's agent was notified at the time of the contents of the package, i. e., that it contained samples; that the season for the territory in and around Indianapolis for the sale of such goods was limited to the time between June 10 and July 4 of each year and that Watts, in view of the fact that he had other territory, could not devote to that particular one exceeding a week, beginning on the morning of June 12, and that the delay in transporting the models caused him to lose all sales in that territory for that season; that the intrinsic value of the models was not exceeding $152.50, but that they had cost plaintiff $652.50 and were worth that much to him as models, if in his possession, and they could be used during selling seasons. He furthermore alleged that

if the models had arrived in Indianapolis on time, his representative, Watts, could and would have sold goods manufactured and dealt in by plaintiff, to various customers, in the aggregate sum of at least $1,000.00 per day, for the entire time allotted to that territory of six days, or a total of $6,000.00, upon which plaintiff would have realized a net profit of fifteen per cent, or $900.00, and in addition to his claim for direct damages he sought the recovery for such profits, but confined the amount to the cost of the models, $652.50. All of the averments of plaintiff's petition were denied, except the receipt of the package and its delay. The jury impaneled to try the case, after hearing the evidence and the instructions of the court, returned a verdict in favor of plaintiff for the full amount claimed, to-wit, $652.50, which the court declined to set aside on a motion made for that purpose, and from the judgment pronounced thereon, defendant prosecutes this appeal, and complains chiefly, if not entirely, of the alleged error of the court in submitting to the jury the item of plaintiff's profits that he claimed he would have realized upon prompt transmission of the package, and we will at once proceed to a disposition of that complaint.

It will be observed at the outset that this is not an action for the loss or even damage to the freight shipped, but it is one solely to recover profits alleged to have been lost by the shipper solely because of *delay* in the shipment. The proof shows that the models were intrinsically worth as much when they did arrive in Indianapolis as they were on the day they should have arrived, and also that they were at least as valuable for models in other territorial locations of plaintiff's customers, as they were in Indianapolis and vicinity during the period set apart for its canvassing by Watts. So that, the recoverable damages to which plaintiff is entitled, under the facts disclosed by the record, are to be measured by the legally recognized standard of recovery during the time the plaintiff was deprived of their use, which, as we have seen, was only six days in and around Indianapolis. Both plaintiff and Watts, in a way, supported in their testimony the allegations of the petition and its amendments to the effect that the latter could and in all probability would have sold to prospective customers therein the amount claimed in the petition of $1,000.00 per day, and plaintiff testified that his net profits thereon would have been fifteen per cent or the full amount set out in his

pleadings. Neither of them testified to any prior promise by any prospective customer in that territory to buy plaintiff's goods that year, nor did they claim that any of them had not already supplied their needs with similar goods of the same class, nor was any prospective customer introduced at the trial to prove any such facts or to prove that had they seen the models and styles dealt in by plaintiff they would have given him an order for any amount, which left, as the probable amount of profits, to be fixed exclusively by the conjectural testimony of plaintiff and his salesman, Watts, and which had nothing for its true basis except prior and succeeding results in that same territory when plaintiff's drummer was fishing and when fish were biting. But, whether the same luck would have been experienced during the season complained of was a matter which, at best, was extremely remote and entirely conjectural and was dependent upon many influencing facts nowhere appearing in the record, as, for instance, whether the merchants were or not already supplied, or whether the particular models did or did not appeal to them, or whether they or all of them would have paid plaintiff for their bills had they made them, and many others that could easily be imagined, and all of which goes to show that the item of claimed profits and which the court submitted to the jury by its instructions were of the most speculative character and such as to call for the application of the general rule that such speculative and remote damages are not recoverable for a breach of contract, except in a few extraordinary cases forming an exception to the general rule.

We will not attempt in this opinion a reasoned analysis of the cases dealing with the question as to when or under what peculiar facts and circumstances anticipated profits may be recovered, since to do so would necessitate an undue lengthening of this opinion, and we will, therefore, confine ourselves to the precise analogous facts presented by the record. But before doing so we deem it appropriate to say that learned counsel for plaintiff furnished to us a long list of cases dealing with the question as to the right to recover prospective profits, some of which are from this court, and others from foreign jurisdictions, but all those from this court are based upon exceptions to the general rule denying such recovery, and the strongest one from other jurisdictions and the one approaching nearest to this case, is that of Wakeman v. Wheeler and Wilson Manufacturing Co.,

101 N. Y. 205, 4 N. E. 264, 54 Amer. Reports 676.   That case, as is also true as to the most if not all the others relied on, was one involving a contract for the sale of a commodity and where the facts were that the seller knew the purposes for which the goods were bought, *i. e.*, for resale at a profit, and where it appeared that the seller was reasonably well acquainted with the retail price and the expense incident to the resale and, consequently, was acquainted with the probable profits of the buyer, and which facts themselves largely differentiate that case from this one.   Here, there was no sale by defendant to plaintiff of any goods, the contract only being to carry and deliver them to a certain place by a certain time and after which plaintiff's use of them in making other contracts and embarking in other collateral undertakings depended upon a long list of uncertainties and conjectures which could not be contemplated or anticipated with any reasonable degree of certainty.   In the one case, plaintiff obtained title to property by means of which he was put in a position to deal with and handle it in a manner to create reasonably certain profits, while it was entirely different in the other one.   To these general observations it may be also added that different courts take different views as to the applicable law arising upon given states of facts, and we will dismiss plaintiff's authorities without further discussion.

That the general rule is as above stated requires the citation of no adjudged cases or text-writers.   Many of them go back to the early English case of Hadley v. Baxendale, 9 Exch. 341, and no court in modern times, howsoever extreme may be its holding, permits the recovery of prospective profits, as special damages, unless they come within the limitations laid down in the Baxendale case.   Hence, this court, in the very recent case of Hines, Director General of Railroads v. Denny, 190 Ky. 416, had before it the precise question here involved, with the exception that the freight there was baggage instead of express, and the plaintiff was the traveling man instead of his principal.   In denying the right to recover the same character of special damages here claimed we said in that opinion: "It is apparent from what has been said of the proof in this case that the damages claimed by appellee for the loss of commissions were and are too remote and conjectural to be accurately, or even approximately, ascertained.   If appellee had been working upon a salary, instead of a commission, the damages claimed

as resulting to his business from the loss of his samples could have been certainly ascertained, for in such case the measure of damages would have been the loss of his salary during the time he was deprived of the samples, which easily was susceptible of proof; but where, as in the instant case, the damages are claimed to have resulted from the loss of commissions on anticipated sales of merchandise to be made by personal effort in a particular territory, it is difficult, if not impossible, by any sort of proof to show the damages otherwise than conjectural or speculative, and therefore not recoverable. This is necessarily so because the number and amount of such sales depend upon many contingencies, such as the suitableness of the goods to the market, fluctuations of trade and the skill, energy and industry of the traveling salesman. In addition to the numerous elements of uncertainty in the way of correct ascertainment of such damages referred to, is yet another arising out of a usage of commercial trade as appertaining to the business of the traveling salesman, which is that his sales of merchandise are made subject to the approval of his employers, for he makes no personal deliveries of the goods he sells and receives no money for them, but takes orders from the purchasers for them, which he forwards to his employer for the latter's acceptance or rejection. If an order is accepted by the employer the goods are shipped to the purchaser and the money therefor sent or paid by the purchaser to the employer as provided by the contract of sale. On the other hand, if the order is rejected by the employer, the giver of the same is advised of that fact and the goods ordered are not shipped to him. It does not appear from appellee's testimony what proportion, if any, of the orders he was accustomed to take for goods were rejected each or any season by his employer, or that his commissions on sales of goods he reasonably could have made, but for the loss of his samples, would not have been lessened by his employer's rejections of such orders from customers. The legal effect of the usage of trade referred to as related to the business of the traveling salesman and his customers, has repeatedly been passed on by this court.'' That opinion also cites as bearing upon, and at least to some extent, sustaining the conclusions therein reached the domestic cases of Courtney Shoe Co. v. Curd & Son, 142 Ky. 219; Charles Brown Grocery Co. v. Beckett, etc., 22 R. 393; Seven Hills Chautauqua Co. v. Chase Bros. Co., 26 R. 334; John

Matthews Apparatus Co. v. Reuz and Henry, 22 R. 1528, and Weick v. Dougherty, 28 R. 930.

Following the Denny case we again had before us almost the identical question here involved in the case of Moss Jellico Coal Co. v. American Railway Express Company, 198 Ky. 202. It was against the same defendant and plaintiff therein sought the recovery of profits as special damages for the loss of a piece of mining machinery, by virtue of which it was claimed that its mining operations were suspended, followed by the loss of profits that could have been realized upon prompt delivery of the necessary piece of machinery that defendant lost. It was both pleaded and proven that the agent of defendant, at the time the shipped article was delivered for transportation was informed that the mine would be idle until it was repaired and returned; yet, we held that such notification was insufficient to charge defendant with the loss of profits, and in speaking of the sufficiency of such notice to entitle the shipper, in any event, to recover profits, we said: ''To make such a notice of the special circumstances sufficient to authorize a recovery for special damages there must be imparted to the carrier information of such facts as will bring home to it the peculiar facts and conditions known to the shipper that will entail upon the carrier a loss not ordinarily within the contemplation of the parties, if the shipment is lost or its delivery delayed. . . . . Justice and fair dealing require that when you expect to recover from a carrier damages of this nature, which are not apparent upon the face of the transaction, such notice should be given as will put the carrier on guard and give it some idea of the additional responsibility involved.'' Further along in the opinion and commenting on the case of Chapman v. Fargo, 223 N. Y. 32, a case very much in point and in which damages were denied for the loss of profits consequent upon delay in shipment of moving picture films, the opinion said: ''In denying the recovery for special damages the court held that the general notice was not a sufficient basis for a recovery, and that the carrier should have been notified of the particular circumstances and purpose making their prompt delivery important,'' and then quoted from the N. Y. opinion this statement: ''In effect he should have been made aware that plaintiff had made certain plans based upon the arrival of the films at a certain time, and that in case of nonarrival these plans would be destroyed in all prob-

ability causing certain damages." The opinion furthermore inserted the rule, as laid down by Hutchinson on Carriers (section 1369) : "General use to which the article was to be put will not be sufficient to charge him with liability for loss of the use or the profits which would thereby have been made. The special circumstances of the case requiring care or expedition must have been brought to his attention."

It is said in brief of counsel that the Denny opinion is not authority because the decision of the question herein involved was *dictum,* since it appeared that the railroad agent, who received the baggage for transportation, was not aware of its contents, but we take a different view of the matter. The principal question for determination in that case was the right of plaintiff to recover the particular special damages claimed and that right was denied him upon two grounds, the one being that he was not entitled to them in any event and the other, that if they were recoverable in a proper case, his pleading was insufficient to allow it in that one, and it is our conclusion that the latter fact did not convert what was said on the former one into *dictum.* But, however that may be, the question was squarely and unqualifiedly presented in the later Moss Jellico Coal Co. case, wherein the same conclusion was reached.

Supplementary to the foregoing, it is conceded by appellee's counsel, and which is true, that in no event may the character of damages herein sought be recovered, unless the defendant receives notice in advance of the true situation sufficient to create the reasonable contemplation that profits will be lost as a result of a violation of the contract. That prerequisite to the recovery of such damages is everywhere recognized and applied. The only notice (and it is denied by defendant's agent) that plaintiff claims to have ever given defendant's agent, on the occasion of the shipment of the models, was that they were *samples* for his traveling man and that the latter expected to receive them the next morning. The agent was not even told that the package contained manufactured models and he might well have concluded that which is ordinarily known as drummer's samples, *i. e.,* smaller pieces of larger bulks of goods, could be easily and quickly supplied with the loss of comparatively little time. Furthermore, he was not informed of the limited time of Watts to canvass Indianapolis and its surround-

ing territory, or of the consequences that would result if he was deprived of so using that particular time.

We, therefore, conclude that if this case was one allowing the recovery of such damages under proper notice, then it did not measure up to the requirements in this case, since, under the proof, the intrinsic value of the models was the same after the delay as before it. The measure of plaintiff's recovery, under the facts in this case, should be the value of the use of the models as such, during the delay, but it should not be based upon or measured by the loss of anticipated profits realized from their use.

Wherefore, the judgment is reversed, with directions to grant the new trial, and for proceedings consistent with this opinion.