**PRINCESS PAT, Ltd., Etc.,**
Plaintiff-Appellee,

v.

**NATIONAL CARLOADING CORP., Etc.,**
Defendant-Appellant.
No. 11243.

United States Court of Appeals
Seventh Circuit.
June 15, 1955.

John C. McKenzie, Chicago, Ill., Dwight Hightower, Baker, McKenzie, Hightower & Brainerd, Chicago, Ill., of counsel, for plaintiff-appellee.

Paul J. Maguire, Chicago, Ill., George H. Cain, Haskins, Maguire & Haskins, Chicago, Ill., Spence & Hotchkiss, New York City, of counsel, for defendant-appellant.

Before MAJOR, FINNEGAN and SWAIN, Circuit Judges.

FINNEGAN, Circuit Judge.

In 1946, Princess Pat, Ltd., plaintiff—Illinois corporate manufacturer of cosmetics, was marketing its products in Brazil through USABRA, its subsequent exclusive Brazilian distributor. Defendant, National Carloading Corporation, incorporated in Delaware, is a foreign and

domestic freight-forwarder acting, here, through one of its divisions called Judson-Sheldon. Judgment was entered below, May 13, 1954, on a jury's verdict for $16,000 in favor of plaintiff, and defendant seeks to have that recovery set aside, or, in the alternative that the judgment be reversed and a new trial ordered.

Parol and documentary evidence were introduced below in support of several issues framed by plaintiff's complaint, defendant's counterclaim and answer. An amended complaint and an answer filed thereto, implemented the original pleadings. A finding of not guilty was directed for plaintiff on defendant's counterclaim amounting to $233.61 for various freight, transfer charges, et seq.

Stripped of non-essentials, this is an instance of plaintiff-manufacturer exporting its product to Brazil by hiring defendant to carry an 18 case shipment of such items. Through one of its own employees, plaintiff obtained shipping space for those goods aboard a Delta Line vessel, loading at New Orleans, and advised defendant accordingly. In short, plaintiff wanted to have its 18 cases delivered, as a unit, alongside the S.S. Cuba Victory for loading. Instead plaintiff's cases were put on a New York pool car and taken to that eastern port. Three events thereafter occurred: (i) the shipments were separated into two parts, (ii) the required consulate documents were not legalized before departure, and (iii) case No. 12 was erroneously designated as case No. 2 on the export documents.

There being a preferential Brazilian tariff rate applicable to bulk cosmetics, plaintiff packaged its own products for shipment in 18 cases marking them so as to indicate the inter-relationship, i. e., "case No. 1 of 18 cases," "case No. 2 of 18 cases." et seq. Defendant accepted possession of these items on November 7, 1946 and initialed a memorandum bill of lading, the original of which discloses on its face, *inter alia*: " * * * Contract C–3197 On the SS Cuba Victory—

Delta Line—Loading Nov. 6, —16— Consigned to Judson Sheldon Corporation, * * * Marks: USABRA Rio De Janeiro No. 1 to 18 INC."

To these errors plaintiff attributes penalties amounting to $4,389.33 for non-compliance with Brazilian customs regulations and loss of seven months marketing time. Defendant moved for a more definite statement and clarification of several allegations contained in plaintiff's complaint and as a result plaintiff responded by stating, in substance: (i) its goods were actually delivered and sold to USABRA who obtained possession of the products from Brazilian Custom's officer July 21, 1947, (ii) the contract price was $8,917.68, and that plaintiff claimed damages "sustained * * * on loss of profits as a result of the negligence of the defendant in the amount of $50,-000.00." For its defense to plaintiff's pleadings, defendant admits it is a freight forwarder under 49 U.S.C.A. §§ 1001–1022; asserts plaintiff prepared its own bill of lading November 7, 1946, but denies plaintiff advised that the shipment was to be forwarded to the Port of New Orleans until on or about November 12, 1946; admits it caused the shipment to be forwarded to the Port of New York on or about November 9, 1946; that after advising plaintiff of that movement, plaintiff did not order its shipment returned or otherwise object to forwarding to New York, but authorized defendant to place the shipment aboard an ocean steamship for delivery at Rio de Janeiro, Brazil; denies that loading of the shipment on two different steamships constituted a breach of the bill of lading contract. As its third and further defense, the forwarder alleged that the damages, if any, were caused by plaintiff's own acts and omissions resulting from inaccurate and improper descriptions of these products; that defendant is exempt from liability under § 1(b), of the Uniform Bill of Lading contract:

"No carrier or party in possession or all or any of the property herein

described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, the authority of law, or the act or default of the shipper or owner, or for natural shrinkage * * *."

Invoking Rule 36, Fed.R.Civ.Proc., 28 U.S.C.A., plaintiff sought an admission of various facts from defendant. Among several items contained in plaintiff's notice were ones which, in substance, sought an admission from defendant that Brazilian customs, regulations and laws provided that bulk shipments of cosmetics must be accompanied by the precise quantity of containers and labels necessary for packaging the goods, and another in which defendant was asked to admit that the absence of five cases from the original shipment constituted a breach of the regulations and delayed release of the shipment from customs. Defendant, responded to the notice to admit facts, answering several, and objecting to the foregoing on the grounds they, requiring an interpretation of laws and regulations of a foreign country, were questions of law, not fact. Under the trial judge's order directing defendant to answer these two propositions, defendant replied in writing that it did not possess sufficient information upon which to form a belief of the truth or falsity of such statements, hence neither admitted nor denied them. Plaintiff, after counsels' opening statements to the jury, seized upon these responses and admissions and urged them. The trial judge denied defendant leave to amend. At the conclusion of its case, plaintiff read these statements to the jury. Defendant now claims prejudicial error because its replies were treated as admissions and leave to amend was denied.

On May 13, 1954, the day counsel argued to the trial jury, plaintiff filed an amended complaint containing *inter alia* an allegation: "That notwithstanding its obligation in the premises, the defendant failed and refused to make out and prepare proper shipping and consular documents." When the evidence was closed, defendant moved to "withdraw the evidence from the consideration of the jury" and to have the trial court, "instruct the jury to return a verdict for the defendant or in the alternative to strike" the aforesaid paragraph on the plaintiffs' amended complaint, and for the trial court to instruct the jury "to disregard all evidence relating to the allegations contained therein." This motion was denied as was defendant's motion for judgment in accordance with its motion for directed verdict or for a new trial. Subsequently, defendant answered plaintiff's amended complaint.

Because the trial judge overruled its motions and refused to permit amendments of answers to plaintiff's notice to admit facts, and construed them as admissions defendant asks us to set aside the judgment or reverse it and order a new trial.

No evidence was presented by defendant at the trial below. Plaintiff's export manager, E. Horwitz, testified about conversations in 1946 with A. G. Zimmerly, manager of defendant's export department of Judson Sheldon Division. Horwitz told Zimmerly that plaintiff had a fairly large shipment of cosmetics for a new Brazilian distributor and discussed shipping strikes at the port of New York. Plaintiff's export manager indicated that he (Horwitz) was thinking of using the port of New Orleans to avoid possible delay at New York.

"Q. What did Mr. Zimmerly say to you as best you can recall?

"A. Well, as best I recall, he gave me the customary assurance that as soon as the shipment was turned over to Judson Sheldon they would do their best to carry out our orders and give us full service on it.

"Q. Now, will you address your attention to this second conversation you had with Mr. Zimmerly within the period identified, and state the substance of that conversation as it occurred.

"A. As I recall the second conversation it was later—it may have been several days or even a week or ten days later. I am not sure.

"I informed him that in the meanwhile, to make sure we would be able to load, I had engaged with the Delta Line myself and secured a contract with them for shipping space on a certain vessel loading on a certain date at New Orleans; that the shipment was ready to be picked up on a certain date and would arrange to have it picked up.

"I also, of course, again emphasized the need for speed on the delivery, because this was a special shipment to us.

"Q. Now, sir, will you describe the physical character of this shipment?

"A. Well, the physical character of the shipment comprised cosmetics, some in bulk and some packages.

"With the bulk products we had packed separately a corresponding number of containers for the finished product, jars and so forth. I do not recall all the products involved, but they covered the entire range of cosmetic products that Princess Pat manufactured."

It appears from this record that on January 10, 1947, defendant's New York office informed plaintiff that its shipment had departed from New York on the SS Mormacmoon, but that only 13 cases of the 18 case lot had actually been loaded, case numbers 2, 3, 5, 6 and 16 having been omitted. Prior to the shipment involved there was congestion at the port of New York due to a series of strikes. Defendant also advised plaintiff about difficulties encountered in locating the missing cases and that the requisite consular documents were unseasonably presented to the Brazilian Consulate General for legalization. Upon defendant's request plaintiff supplied new invoices to cover the remaining five cases and necessary shipping instructions. Plaintiff's original invoice (Exhibit 4) bears the words "Via: Freight—F.O.B. New Orleans (Finished Product); F.O.B. Chicago (Bulk Material)." The entire shipment cleared Brazilian customs, July 21, 1947, and thereafter plaintiff claimed that it received advice that its shipment was subjected to fines and demurrage charges. Plaintiff contended that Brazilian regulations providing that cosmetics shipped in bulk, must be accompanied by sufficient labels and containers to package the shipment which must move through customs as a unit, were violated when the cases were separately imported hence imposition of the fines.

■ Patricia Gordon, president of Princess Pat, Ltd., testifying on plaintiff's behalf, said the billed price of the shipment was $8,917.68 and the mark-up was ⅔ of that invoice, or $5,945.12. For two, three-month periods of lost orders the total would be $11,890.24. Enough of the facts found in this record are recounted here to describe the situation. We have carefully reviewed this entire record and are satisfied that the trial judge correctly denied defendant's several motions already described. Judge Frank described with studious detail, various aspects of motions for special verdicts in Skidmore v. Baltimore & O. R. Co., 2 Cir., 1948, 167 F.2d 54, 56, saying about that case, *inter alia:* "Undeniably, the verdict affords no satisfactory information about the jury's findings. But almost every general verdict sheds similar or even greater darkness." While Wilkerson v. McCarthy, 1949, 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497, involved the Federal Employer's Liability Act,[1] we note that Mr. Justice Black pointed out that:

"It is the established rule that in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evi-

---

1. 35 Stat. 65, as amended by 36 Stat. 291 and 53 Stat. 1404, 45 U.S.C.A. §§ 51–60.

dence and reasonable inferences which tend to support the case of a litigant against whom a peremptory instruction has been given."

We think plaintiff was entitled to reach the jury here because, in our opinion, there were several fact questions embedded in its evidence. Moreover the jury was adequately instructed on the aspect of damages. What Judge Lindley said in Stueber v. Admiral Corporation, 7 Cir., 1949, 171 F.2d 777, 779, adequately determines the propriety of the refusals to direct a verdict in this appeal:

"Before we can say the trial court erred in failing to direct a verdict for defendant, the record must reflect clear error in the holding that the evidence was sufficient to go to the jury. It is our duty to accept as true all the facts which the plaintiffs' evidence tends to prove and to draw against the proponent of the motion all reasonable inferences most favorable to the respondent. If the evidence is of such character that reasonable men, in an impartial exercise of their judgment, may reach different conclusions, the case must be submitted to the jury. (Citing.) * * *"

There is that quantum of evidence, just mentioned in the passage from the Stueber case, to warrant submission of plaintiff's case to the jury on the various issues framed by the pleadings including notice to defendant, loss of profits and special damages. Consequently we hold the trial judge correctly overruled defendant's several motions, viz., for a directed verdict and judgment in accordance with its motion for a directed verdict or for a new trial. Gunning v. Cooley, 1930, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; McKay v. Costigan, 7 Cir., 1950, 179 F.2d 125.

■ We find no persuasive reason why the court below was forced to tolerate defendant's straddling statements sponsored as a reply to paragraphs 22 and 23 of plaintiff's request for admissions. Under Rule 36, Fed.R.Civ.Proc., 28 U.S.C.A., defendant's asserted errors are untenable especially in light of this statement in that Rule:

"A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party deny only a part or a qualification of a matter of which an admission is requested, he shall specify so much of it as is true and deny only the remainder."

■ Plaintiff's president testified without any cross-examination or objection to her testimony. We refuse to disturb the jury's verdict under defendant's theory that loss of profits, here were remote, speculative or conjectural. Excelsior Motor Mfg. & Supply Co., v. Sound Equipment, 7 Cir., 1934, 73 F.2d 725, 728–729. Defendant cites us to Moss Jellico Coal Co. v. American Ry. Express Co., 1923, 198 Ky. 202, 248 S.W. 508, as the key case for reversing this judgment. We disagree. The reason, we think, why non-delivery of the machinery in Moss-Jellico did fail to support or warrant special damages was because as the Kentucky court pointed out: "There is no presumption that a plant is operating at a profit at any particular time; such things, from their nature, can only be known to those in charge of the business." Id., 248 S.W. 510. There is some evidence, here, that defendant was informed plaintiff's cosmetics were a special shipment; that they constituted an initial shipment to a new distributor; that stocks were depleted and that plaintiff desired its products to arrive in Brazil for the carnival season consistent with a schedule planned by its Brazilian distributor.

A careful study of this record satisfies us that there is wanting any merit in other points urged by defendant. It is unnecessary to discuss each of them beyond what we have already reported.

The judgment of the District Court is

Affirmed.