**UNITED STATES of America, Plaintiff,**

**v.**

**AMERICAN TELEPHONE & TELE-GRAPH COMPANY, Western Electric Co., Inc., Bell Telephone Laboratories, Inc., et al., Defendants.**

Civ. A. No. 74–1698.

United States District Court,
District of Columbia.

June 22, 1979.

Kenneth C. Anderson, Jules M. Fried, Alexander J. Pires, Peter B. Kenney, Jr., Antitrust Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Harold S. Levy, Jim G. Kilpatric, Richard C. Schramm, New York City, Leonard Joseph, George L. Saunders, Jr., John D. Zeglis, Chicago, Ill., Richard J. Flynn, Washington, D. C., for defendants; F. Mark Garlinghouse, George V. Cook, New York City, William L. Kefauver, of counsel.

## OPINION

HAROLD H. GREENE, District Judge.

This antitrust suit was brought by the government against the American Telephone & Telegraph Company and a number of its subsidiaries on November 20, 1974. For about three and one-half years, little factual development occurred, largely because discovery was stayed pending resolution of jurisdictional issues here, in the Court of Appeals, and in the Supreme Court. Such was the posture of the case when it was assigned to this Court on June 22, 1978. On September 11, 1978, this Court issued an order (Pretrial Order No. 12) and an opinion (*United States v. American Telephone & Telegraph,* 461 F.Supp. 1314 (D.D. C.1978)) establishing a blueprint for the discovery phase of this litigation and a procedure for defining and narrowing the issues. That order provides that each party shall file four successive Statements of Contentions and Proof at six-month intervals—beginning on November 1, 1978, and ending on April 1, 1980—which are to describe, with increasing particularity, that party's contentions and its evidence in support of them. The order further directs that, with exceptions not relevant here, successive Statements may not enlarge upon contentions previously made or evidence previously described; continuing discovery is to be limited to the issues framed by each successive Statement; the parties are to be restricted at trial to those issues identified in the final Statements; and all discovery is to be closed as of April 1, 1980.

The process established by Pretrial Order No. 12 has thus far worked reasonably well. On November 1, 1978, the government filed its first Statement of Contentions and Proof, a 529-page document which for the first time set forth in considerable detail its allegations and the evidence it either possesses or expects to acquire to prove them. Similarly, on January 8, 1979, defendants filed their first Statement detailing in 451 pages their contentions and their anticipated proof. The parties' second Statements of Contentions and Proof, which modify and narrow some of the allegations and evidence described in the first set, were filed on April 20, 1979, and on May 21, 1979, respectively. A schedule for the remaining Statements has been established. The question now is how this case should proceed from this time on.

I

Perhaps the most significant problem with antitrust litigation in complex cases is delay. As the Report to the President and the Attorney General of the National Commission for the Review of Antitrust Laws and Procedures (1979) ("National Commission Report") points out (p. 11):

The . . . burdens [resulting from delay] on litigants and the courts are great. Excessive public and private resources are needlessly expended; confidence in antitrust enforcement and the judicial process is weakened; and effective enforcement is impeded. Difficult remedial problems are compounded because the market reflected in the record may have changed substantially by the time the remedial state is reached. In

short, the overall effectiveness of the antitrust laws in promoting a competitive economy is impaired.

A principal cause of unnecessary delay in antitrust and other complex litigation is the absence of active judicial management and control. *E. g.,* Wright & Miller, *Manual for Complex Litigation,* § 1.10 at 15 (1977); *Protracted Cases—Recommended Practices, infra,* 25 F.R.D. at 384 (1960).[1] In this regard, the National Commission Report, the most recent study of this subject, explains (pp. 12–13), "the absence of strong judicial control permits discovery to mushroom and issues to go unfocused; delay and obfuscation are more likely to be adopted as litigation tactics; bitterness and suspicion may more rapidly develop and persist between counsel. As a result, excessive motion practice and other examples of dilatory and overly litigous conduct proliferate, while incentives for stipulations and other potentially expediting types of behavior are reduced."

Much consideration has been given in this case to various means for discharging the Court's and the parties' responsibility in these respects. At a hearing held on January 11, 1979, defendants suggested, and the government agreed, that the issues might be further defined, and the volume of trial evidence further reduced, by obtaining stipulations of fact in advance of trial. It became readily apparent that the Statements of Contentions and Proof, with their relatively extensive description of issues and evidence, would provide a useful vehicle for the development of a stipulation process. Accordingly, the Court entered an order on February 1, 1979, requiring the parties to review each other's Statements and to advise the Court and their opponents which portions of those Statements might be stipulated to either in their present form or with changes in language, and which portions were expected to be subject to contest at trial.

Defendants thereupon filed approximately 4,300 so-called worksheets[2] in which they analyzed the government's first Statement of Contentions and Proof, almost literally sentence by sentence, stating with respect to each segment (1) that they were prepared to stipulate to it in its present form, (2) that they were prepared to stipulate to it with some modifications in language, or (3) that they were not prepared to stipulate to it because (a) it was in their view incorrect and expected to be subject to contest at trial or (b) further discovery was necessary to determine the possibility of stipulation. At about the same time, the government filed a 70-page document which, in somewhat less detailed form, advised the Court as to which parts of the defendants' Statement it was prepared to stipulate, either with or without changes in language.

After receipt of these documents the Court, on March 21, 1979, issued an Opinion suggesting a further procedure to advance the stipulation process and requested comments from the parties thereon. Under the proposed procedure, once a party specified language changes in its opponent's contentions, that opponent was to signify its acceptance, rejection, or further modification, and thereby provide another opportunity for the parties to arrive at agreed-upon stipulations. It was further suggested that, if it was claimed that additional discovery was required before a stipulation could be entered into, such discovery would be provided.

---

1. The Manual for Complex Litigation points out (p. 15) that although the Federal Rules of Civil Procedure contemplate that in the ordinary case discovery will be directed by counsel, with infrequent intervention by the judge when counsel are unable to agree, this pattern may be ineffective in complex cases if they are to be processed expeditiously. It notes that both the Bench and the Bar are in nearly unanimous agreement on the fundamental principle that a complex case must be managed by a judge with a firm hand. Similarly, according to the National Commission Report (p. 23 n.5), one hundred per cent of the respondents to an American Bar Association Antitrust Section questionnaire stated that lack of judicial supervision was a source of delay in antitrust litigation. See also Report, pp. 11–26.

2. Upon defendants' application, these documents were ordered sealed pending the conclusion of the formal stipulation process.

Coincidentally with the issuance of the March 21 opinion, the government filed a memorandum entitled "Plaintiff's Proposals Regarding the Discovery and Trial Phases of This Litigation." A number of suggestions were made in that memorandum, all of which are discussed below. Insofar as the stipulation process was concerned, the government proposed that it not be pursued further but be replaced by a procedure for the systematic use of requests for admissions pursuant to Rule 36, F.R.Civ.P. Defendants filed objections to the government's proposals, and on April 24, 1979, the Court directed the parties to brief all outstanding issues, including those raised in the Court's March 21 opinion and the government's memorandum of the same date. The parties duly filed memoranda in response to the Court's questions, and oral argument was held thereon on May 11, 1979.

## II

The first issue to be considered is the relative merit of a request for admissions procedure vis-a-vis the ongoing stipulation process. Since the government suggests that the stipulation route be wholly abandoned in favor of the admissions procedure, and defendants contend that resort ought not to be had to requests for admissions except upon an *ad hoc* basis as initiated by the parties, it becomes necessary for the Court to determine which procedure (or what combination of procedures) is most appropriate in light of the need both to bring the discovery phase of this litigation to an expeditious conclusion so that a prompt trial may begin, and to eliminate tangential issues in order to reduce the scope and duration of the trial.

There are inherent benefits and drawbacks to each of the two procedures. Indeed, features which from one perspective may be viewed as obstacles to a smoothly-functioning pretrial process may from another be regarded as advantageous. For example, defendants correctly point out that substitution of the request for admissions procedure for the stipulation process would require a complete redrafting of the Statements of Contentions and Proof in different, more "neutral" terms—a change in direction which presumably would entail a great deal of additional effort and loss of time. Yet the government notes, with equal justification, that it may not be desirable to remain wedded to the Statements which were not drafted with either a stipulations or an admissions procedure in mind.[3]

Similar differences of opinion exist with regard to the proper focus of the process. Under the proposed stipulation process, that focus is on documentation in the hands of a party's opponent, for the party which claims to be unable to stipulate to a factual allegation in its opponent's Statement of Contentions and Proof must describe what additional discovery—either from that opponent or from third parties—it requires in order to stipulate to that allegation. Thus, the process naturally and almost automatically stimulates further relevant discovery. Under the admissions procedure, by contrast, since allegations are submitted to the opposing party in the form of requests for admissions supported by records and documents, the focus, insofar as documentation is concerned, is directly only on a party's own evidence. While that procedure therefore does not promote discovery, it does advance the pretrial process in another way—it forces the parties to reveal how their own evidence relates to their specific allegations. See *Seminar on Protracted Cases,* 23 F.R.D. 319, 351 (1958).

Finally, it has been suggested that the Rule 36 admissions route is likely to be relatively formalistic and thus ill-suited to negotiated agreements, in that facts that legitimately can be denied in response to specific requests probably will be denied. See *Protracted Cases—Recommended Procedures,* 25 F.R.D. 351, 397 (1960). Al-

---

**3.** The government also suggests that requests for admissions would be more precise than the Statements of Contentions and Proof. However, there is nothing to prevent the parties from introducing more precision into their Statements of Contentions and Proof. Indeed, Pretrial Order No. 12 envisions such additional particularity as successive Statements are filed.

though the government does not regard this as a serious problem, since it does not expect that it will be feasible in any event to arrive at stipulations through negotiations, defendants believe that negotiation is inherent in and vitally necessary to a successful stipulation effort.[4]

In my view, while there is merit to the government's contentions on each of these issues, the over-all balance favors further pursuit of the stipulation process, for several reasons.

First. Adequate discovery lies at the heart of the pretrial process (*Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1946)), and it is clear that, whatever may be the merits of the requests for admissions procedure in other respects, they do not generate discovery. Revelation of the evidence in support of a party's allegations can and will be achieved through other means and at a later time (see note 11 *infra*),[5] but for now speedy completion of discovery must be given priority if this case is to be brought to trial within a reasonable period of time.

Second. Defendants have already submitted to the Court a detailed analysis of the government's Statement of Contentions and Proof, listing each factual allegation to which they deem themselves unable to stipulate and why they cannot do so, while the government has not provided a similar analysis of defendants' Statement. In that posture, absent good cause, it would be neither appropriate nor fair to the defendants[6] to substitute at this juncture a new procedure which will perpetuate this disparity.[7]

Third. Even if the stipulation process does not ultimately yield all of the fruits that may be expected of it under optimum conditions, its potential has by no means been exhausted. For example, both parties have indicated that they are prepared to stipulate to a considerable number of factual allegations in their opponents' Statements with only relatively minor changes in language. At the very least, therefore, a mechanism should be established for ascertaining the extent to which stipulations may be agreed upon with respect to these subjects. Similarly, there are a number of claims in the parties' respective Statements of Contentions and Proof which are apparently susceptible of a successful stipulation process upon the basis of some additional discovery. As to such matters, too, it would be worthwhile to engage in that process so as to eliminate additional disputed matters from the trial itself.

Fourth. The burden of persuasion lies with those who would abandon the "status quo" procedure in which the parties have invested a great deal of time and effort. Yet it is clear, at a minimum, that the admissions process has not been shown to be so superior that it should at this point wholly displace the stipulation procedure.

In short, it would be inappropriate to abandon the stipulation effort at this time. It does not follow, however, that the government's proposal for systematic utilization of requests for admissions must be ignored. The two procedures are by no means mutually exclusive or inconsistent

---

4. In most other significant respects the admissions and stipulation procedure would yield largely similar results (see government Memorandum, pp. 10–11).

5. Some of that evidence is already being disclosed in the various Statements of Contentions and Proof.

6. Over strenuous defense objections, the Court significantly facilitated the government's discovery burden by ordering the production to it of some 2.5 million pages of documents previously produced by defendants to private parties in other litigation. *United States v. Am. Tel. & Tel. Co., supra,* 461 F.Supp. at 1337–1343.

7. The government's suggestion that, should the defendants feel that they would be victimized by this change in procedure, "they are free to withdraw some or all of the stipulations they tentatively proposed" (Memorandum, p. 7), can most charitably be described as cavalier. Should that suggestion be taken seriously by defendants and the Court, it would, at a minimum, result in a substantial loss of time and effort, and could not but have the consequence of considerably delaying the start of the trial of this case.

either in their theoretical or practical implications and, for the reasons cited above, requests for admissions can indeed significantly assist in narrowing the issues and in focusing the trial inquiry. It is also apparent, however, that concurrent use of the two processes may prove to be both confusing and unnecessarily burdensome for the parties.

Accordingly, I have concluded that the stipulation process shall go forward as previously outlined, and that requests for admissions shall be utilized thereafter as necessary to refine the remaining issues. See Rule 26(d), F.R.Civ.P.[8] The means for implementing both procedures (as well as a number of others) and a schedule for doing so are delineated below.

### III

■ Pretrial Order No. 16, which is being issued today, sets forth in detail the procedures to be followed hereafter, in accordance with specific timetables. *Greyhound Lines, Inc. v. Miller,* 402 F.2d 134, 144 (8th Cir. 1968); *Freehill v. Lewis,* 355 F.2d 46, 48 (4th Cir. 1966); *Protracted Cases—Recommended Procedures, supra,* 25 F.R.D. at 395. These procedures are designed, first, to produce agreement on and thereby to eliminate from the trial itself all those matters about which there is not or should not be any genuine disagreement and thereby to reduce the scope and duration of the trial, and second, to provide for an orderly progression of the remainder of the case to a definite, relatively early[9] trial date.

This litigation, involving as it does corporate entities subject to public regulation and general notoriety, is especially well suited for proceeding by this method. Many of the facts that are likely to be relevant to the issues are already on the public record in one form or another (through evidence of judicial, legislative, and regulatory proceedings involving these defendants or their competitors) and therefore not subject to genuine dispute.[10] The trial itself may and should therefore be confined in substantial part to paring down the masses of known facts to manageable proportions and meaningful focus, dealing with matters of emphasis and purpose, and drawing conclusions from established facts.

To accomplish these objectives and others, Pretrial Order No. 16 divides the remaining pretrial period into three phases. The first phase, from the present to December of this year, will be devoted to the perfection of stipulations, the exchange of market data, the identification of facts appropriate for judicial notice, and the development of an outline of the remaining contested issues. That phase will culminate in the parties' filing of their third Statements of Contentions and Proof by the end of this year. The second phase, beginning immediately thereafter and ending in April 1980, will involve the completion of discovery, the exchange of requests for admissions and responses thereto, and the filing of the parties' fourth and final Statement of Contentions and Proof. The third phase, lasting from April through August of next year, will witness the final pretrial preparations: the filing of the parties' pretrial briefs, the principal pretrial conference, the issuance by the Court of its order to govern the course of the trial, and the parties' compliance with the directions in that pretrial

---

**8.** The government suggests that to proceed with both processes would require a great expenditure in resources. The government must always have expected that if this case was to be prosecuted to a fair and expeditious conclusion it would require the expenditure of considerable resources. Moreover, by minimizing the areas of contention remaining for trial, any expenditure of resources at this stage will reduce both the duration of that trial and the need for additional expenditures of resources in its conduct.

**9.** As noted above, while the complaint was filed late in 1974, it was only last Fall, when the jurisdictional issues were finally disposed of, that progress toward a trial date became possible. Under the schedule announced herein, the trial will begin approximately two years after the disposition of those issues.

**10.** While the extent and pervasiveness of the regulation is an issue in this case, it is nevertheless clear that many of the relevant facts are in the regulatory records.

order.[11] The trial itself will begin at the conclusion of the last pretrial phase.

The specific responsibilities of the parties and the Court during this period will be as follows:

1. To the extent that a party has indicated its acceptance of language in the Statement of Contentions and Proof submitted by its opponent, that language will be deemed incorporated in a tentative stipulation as of the date of the entry of Pretrial Order No. 16.

2. Where a party has indicated that it is prepared to stipulate to an allegation or evidence of fact or opinion in the Statement of Contentions and Proof submitted by its opponent with specific changes in language, that opponent shall by July 9, 1979, report on its acceptance of the proposed change. If the answer is in the affirmative, the language as altered will be deemed as of that date incorporated in the tentative stipulation; if it is in the negative, the opponent shall by that same date report the basis of the objection and indicate what alternative language is acceptable. The party receiving such a counter-proposal shall by August 6, 1979, report the acceptability of the new language. If accepted, the language will be deemed included in the tentative stipulation; [12] if rejected, the dispute will be reserved for the conferences to be held by the Special Masters. See *infra.*

3. By July 23, 1979, the government shall file with the Court and with defendants a report cataloguing those matters in defendants' first Statement of Contentions and Proof (as amended by the second Statement) to which it is not willing to stipulate.

This report shall specify (a) matters on which it requires further information and discovery, and (b) statements which it regards as incorrect and subject to dispute at the trial.

4. On or prior to August 20, 1979, both parties shall file a further report as follows:

a. With respect to assertions in the opposing party's Statement of Contentions and Proof which a party claims to be factually incorrect, each party shall report (1) in what respects such assertions are incorrect, and (2) the relevance and materiality of the allegedly incorrect information. Allegations and evidence which are not or cannot reasonably be described as incorrect, or if the incorrectness is not material, shall be included in the tentative stipulation as originally proposed. See *Payne v. S.S. Nabob,* 302 F.2d 803 (3rd Cir. 1962); *Pakech v. Am. Export-Isbrandtsen Lines,* 69 F.R.D. 534 (E.D.Pa.1976).

b. With respect to matters on which a party requires further information and discovery, it shall state in its report (1) precisely what additional discovery is required, (2) whether such information and discovery has been sought and from whom, and (3) the current status of the request. If the required information is in the possession of the opposing party, that party shall by September 17, 1979, either provide the requested information or state its reasons for failing to do so. Upon application, the Magistrate [13] will evaluate those reasons under the standards of the Federal Rules of Civil Procedure and enter appropriate orders by

---

11. Such compliance will include the preparation and filing of trial briefs; definition of the legal and factual issues and contentions (by way of refinement and amplification of the issues identified by the Special Masters), identification of the witnesses expected to be called and the substance of their testimony (or the submission of that testimony in written form, see *infra* ), and the exchange of documents and other exhibits intended to be introduced, together with the objections or lack of objection of the opposing party with respect to authenticity and other questions of admissibility.

12. In light of additional discovery taken since February of this year, the filing of the second set of Statements, and as part of their continuing obligation to reduce the trial to truly contested matters, the parties are expected also to make purposeful efforts to stipulate to facts in the respective Statements of Contentions and Proof not previously considered for stipulation.

13. Magistrate Lawrence Margolis has ably supervised discovery in this case from its inception, and it is anticipated that he will continue to perform all the functions assigned to a Magistrate under this Opinion.

October 15, 1979.[14] If the reason for failure to provide the information involves a claim of privilege, the Special Masters[15] shall, upon application, evaluate the claim under the substantive and procedural guidelines previously adopted and enter appropriate orders by October 15, 1979.[16]

After the requested information is made available, either by agreement of the opposing party, or by order of the Magistrate or the Special Masters, the material to which the request relates will be included in the tentative stipulation as of October 22, 1979, unless good cause is shown to the contrary. If the required information is in the possession of a third party, the requesting party may seek an order for production from the Magistrate, and if the information is produced by October 15, 1979, the material in the Statement of Contentions and Proof to which the request relates will likewise be included in the tentative stipulation as of October 22, 1979, unless good cause is shown to the contrary.

 6. At dates, times, and places to be determined by the Special Masters, but beginning on or about October 29, 1979, the parties shall meet with the Special Masters in a series of pretrial conferences to perfect the stipulations. The Special Masters will incorporate in a formal stipulation all factual matters tentatively agreed upon pursuant to the process described above, and they will supervise negotiations between the parties with respect to those matters on which stipulations were attempted but not effected. Any agreements reached by this process of negotiation will likewise be included in the formal stipulation. That stipulation shall be filed with the Court by November 26, 1979,[17] together with all accompanying exhibits. The Special Masters shall also report to the Court, to the extent practicable, on matters with respect to which stipulations were not effected, and their views, if any, as to good faith or lack of good faith of the party refusing to stipulate. See generally, Rule 37, F.R.Civ.P.[18]

At the same pretrial conferences, and with the assistance of the parties, the Special Masters will develop a proposed statement of the remaining contested issues,[19]

---

**14.** The deadlines set herein for the Magistrate and the Special Masters are not absolute since these individuals obviously have many responsibilities not related to this lawsuit. However, if the over-all schedule envisioned by this Opinion is to be maintained, general compliance with the deadlines is necessary and should be attempted.

**15.** Professors Paul Rice and Geoffrey Hazard have been passing on all claims of privilege asserted by defendants and the various government agencies pursuant to the excellent and comprehensive substantive and procedural guidelines they have developed. At the Court's request, they have agreed to undertake the important additional responsibilities discussed herein.

**16.** If it is the conclusion of the Magistrate or the Special Masters, as the case may be, that the requested discovery is too voluminous, or that it is otherwise impractical to enter an appropriate order within the time schedule provided, they will be expected so to advise the Court by that same date.

**17.** That stipulation and the other materials filed with the Court in advance of trial will be formally admitted into evidence at the beginning of the trial. See p. 336 *infra.*

**18.** In this vein, Rule 16 contemplates that the Court may compel parties to stipulate as to all matters concerning which there can be no real issue. *Holcomb v. Aetna Life Ins. Co.,* 255 F.2d 577 (10th Cir. 1958), *cert. denied* 358 U.S. 879, 79 S.Ct. 118, 3 L.Ed.2d 110 (1958). As the Tenth Circuit stated in *Berger v. Brannan,* 172 F.2d 241, 243 (10th Cir. 1949), *cert. denied,* 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949), "The spirit of a pre-trial procedure is not only to call the parties together and ask them to stipulate as to all matters concerning which there can be no dispute, but to compel them to stipulate . . . ." See also *Brinn v. Bull Insular Lines, Inc.,* 28 F.R.D. 578 (D.Pa.1961); *Matlack Inc. v. Hupp Co.,* 57 F.R.D. 151 (D.C. Pa.1972); *National Commission Report, supra,* pp. 63–64, 72 (Commission suggests that Rule 16 be amended to clarify judicial authority to define issues unilaterally where the parties have failed to use reasonable efforts to agree). *But see Edwards v. Anderson Safeway,* 542 F.2d 1318 (7th Cir. 1976); *Padovani v. Bruchhausen,* 293 F.2d 546 (2d Cir. 1961).

**19.** See generally, *Pacific Indemnity Co. v. Broward County,* 465 F.2d 99, 103 (5th Cir. 1972); *Brunswick v. Regent,* 463 F.2d 1205, 1206 (5th Cir. 1972); *FDIC v. Glickman,* 450 F.2d 416, 419 (9th Cir. 1971); *Delta Theatres, Inc. v. Paramount Pictures, Inc.,* 398 F.2d 323, 324

and file it with the Court by November 26, 1979.[20] The parties' third Statements of Contentions and Proof, presently due on October 1, 1979 and November 31, 1979, respectively, shall be filed instead by December 31, 1979, and they shall be so structured as to reflect the issues developed during the special pretrial conferences presided over by the Special Masters.

7. Between December 1 and December 31, 1979, the parties may[21] submit to their opponents requests for admissions[22] pursuant to Rule 36, F.R.Civ.P., together with such documents as will in their judgment permit the opposing party to admit or deny the factual allegations. Each party shall respond by February 18, 1980, admitting or denying each request, and stating its objections, if any, to the authenticity or relevance of each attached document (or series of documents). Failure to respond to any particular part of a request will be regarded as an admission (see, *e. g., John Mohr & Sons v. Apex Terminal Warehouses,* 422 F.2d 638 (7th Cir. 1970)), and statements of inability to admit or deny shall be supported by detailed reasons. See *Princess Pat, Ltd. v. National Carloading Co.,* 223 F.2d 916 (7th Cir. 1955)). A denial shall be forthright, specific and unconditional; and if it is not, it, too, will be treated as an admission. *Southern Ry. v. Crosby,* 201 F.2d 878 (4th Cir. 1953); *Havenfield Corp. v. H & R Block, Inc.,* 67 F.R.D. 93 (W.D.Mo. 1973). A party that fails to make a good faith effort to respond adequately may be ordered to respond more fully (*Alexander v.*

*Rizzo,* 52 F.R.D. 235 (D.Pa.1971); *U.S. Plywood Corp. v. Hudson Lumber Co.,* 127 F.Supp. 489 (D.N.Y.1954); *Criterion Music Corp. v. Tucker,* 45 F.R.D. 534 (D.Ga. 1968)),[23] or it may be required to pay the expenses incurred in proving the subject of the request. Rule 37(c), F.R.Civ.P. See *Bradshaw v. Thompson,* 454 F.2d 75 (6th Cir. 1972), *cert. denied* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972); *Bertha Bldg. Corp. v. National Theatres Corp.,* 15 F.R.D. 339 (E.D.N.Y.1954). Facts which are admitted and documents whose authenticity and relevance are not disputed shall be filed with the Court not later than March 3, 1980 (see *Kohler v. Jacobs,* 138 F.2d 440 (5th Cir. 1943); *Williams v. Howard Johnson's, Inc.,* 323 F.2d 102, 105 n. 9 (4th Cir. 1963); Wright & Miller, *supra,* § 2264 at 739) and those on which the Magistrate has ruled shall be filed with the Court by April 1, 1980.

8. In appropriate instances, judicial notice may be taken of judicial proceedings (see, *e. g., State of Florida Board of Trustees v. Toppino,* 514 F.2d 700, 714 (5th Cir. 1975) (related proceedings and records); *Gomez v. Wilson,* 155 U.S.App.D.C. 242, 247 n. 28, 477 F.2d 411, 416 n. 28 (1973) (citizen affidavits in record of other litigation in same court)); administrative proceedings (see, *e. g., Brotherhood of Teamsters v. Zantop Air Transport Corp.,* 394 F.2d 36, 40 (6th Cir. 1968) (rules, regulations, and orders); *Dispatch, Inc. v. City of Erie,* 364 F.2d 539, 541 (3d Cir. 1966) (FCC bulletin

(5th Cir. 1968); *Life Music, Inc. v. Broadcast Music, Inc.,* 31 F.R.D. 3 (S.D.N.Y.1962), *petition for mandamus denied sub nom. Life Music, Inc. v. Edelstein,* 309 F.2d 242 (2d Cir. 1962); *Owen v. Schwartz,* 85 U.S.App.D.C. 302, 177 F.2d 641 (1949); Wright & Miller, *Federal Practice and Procedure* § 1525 p. 585 (1971); *Seminar on Protracted Cases,* 23 F.R.D. 319, 413 (1958).

**20.** The statement is not expected to be finely detailed but to concentrate on the central or core issues separating the parties.

**21.** The government has suggested that a party might be precluded from proving at the trial any fact with respect to which it has not filed a request for admission. Such a procedure is inappropriate while significant discovery is still proceeding. Moreover, the government did not

support its suggestion either by case authority or by a plan for accomplishing this potentially enormous undertaking. For these reasons, the suggestion is rejected at this time without prejudice to the submission by the government of a more concrete proposal.

**22.** The parties are, of course, free to submit reasonable *ad hoc* requests for admissions in advance of these dates as provided for under the Federal Rules of Civil Procedure.

**23.** Applications for orders to require a party to admit or deny more fully shall be submitted to the Magistrate by March 3, 1980, who will rule on such applications by March 24, 1980.

and expressed position); *cf. Illinois Central Railroad Co. v. Tennessee Valley Authority,* 455 F.2d 308, 310 n. 4 (6th Cir. 1971) (TVA annual reports)); and legislative proceedings (see, *e. g., Greci v. Birknes,* 527 F.2d 956, 958 n. 4 (1st Cir. 1976) (history of treaty—"legislative facts"). Accordingly, by July 23, 1979, each party shall designate and serve upon the other a list of judicial, administrative, and legislative materials which it wishes the Court to judicially notice.[24] Each party shall also indicate the extent to which, and the purpose for which, the materials are to be noticed.[25] The opposing party shall have until August 20, 1979, to respond and note its objections, if any, to the propriety of noticing such materials, and to request the notice of additional portions of these materials.

Following these exchanges, but not later than September 17, 1979, the parties shall submit to the Court, separately or jointly, compilations of the designated materials and indices (a) briefly describing the materials, (b) indicating the extent and purpose for which judicial notice is being sought, (c) noting whether or not there is agreement that, subject to a showing of relevance and materiality, the Court may take judicial notice; and (d) if there is no such agreement, the objections that have been raised. Upon the Court's ruling on the objections, all the materials of which judicial notice has thus been taken will be deemed filed with the Court.

24. Where the proceedings are voluminous, the party designating the materials shall highlight the portions on which it principally relies.

25. Notice of these records is likely to be limited to the fact of their existence rather than the truth of the matters contained therein. But see *Granader v. Public Bank,* 417 F.2d 75, 82–83 (6th Cir. 1969); *Insurance Co. of North America v. National Steel Service Center, Inc.,* 391 F.Supp. 512, 518 (N.D.W.Va.1975).

26. According to Wright & Miller, *supra,* § 1527 p. 605, "when an admission or agreement concerning a factual issue is made at the pretrial conference and is incorporated in the court's pretrial order, that issue stands as fully determined as if it had been adjudicated after the taking of testimony at trial, and an attempt to pursue any issue not listed in the order may be rejected by the trial court." See *Mull v. Ford Motor Co.,* 368 F.2d 713, 716 (2d Cir. 1966);

9. By means of these procedures, the matters stipulated to, the admissions, the judicial notice facts, and the market information discussed in Part V *infra,* will have been fully identified by April 1 of next year. These materials will thereafter be incorporated in the pretrial order,[26] and the parties will then be able to proceed with their trial preparation upon the assumption that all such materials will be admitted into evidence,[27] without the need for further proof, at the outset of the trial.[28]

10. The final Statements of Contentions and Proof required by Pretrial Order No. 12 will become due on April 28, 1980, and the remaining pretrial proceedings will thereafter take place as discussed in Part IV below.

## IV

In its March 21, 1979, memorandum, the government recommended that the Court conduct a trial "of the background portions of the case in November of this year, and a trial of the more substantive issues at a subsequent time." In response to the Court's April 24, 1979, inquiry as to "how the issues for [the background] trial phase may be delineated in advance, what those issues would be, and how far the trial of the background phase would be affected by materials discovered thereafter," the government simply modified its proposal to pro-

*United States v. Sommers,* 351 F.2d 354, 357 (10th Cir. 1965); *Ringling Bros. Barnum & Bailey Combined Shows, Inc. v. Olvera,* 119 F.2d 584 (9th Cir. 1941); *Fruin-Colnon Int'l. S. A. v. Concreto S. A.,* 231 F.Supp. 14 (D.Canal Zone 1964); *United States v. 12,800 Acres of Land, Etc.,* 69 F.Supp. 767–775 (D.Neb.1947).

27. These materials may be further supplemented for good cause shown in conjunction with the submission of the final Statements of Contentions and Proof, the final pretrial conference, or otherwise.

28. To the extent that defendants may not wish to waive their right to move for a dismissal at the conclusion of the government's case, their evidence will be admitted without prejudice to the filing of such a motion.

vide that its own "background case" would be placed in evidence in November, subject to cross examination, but that defendants' "background case," if any, would not. This modification of the government's plan does not in any way solve the problems inherent in a phased trial.[29]

Bifurcated trials are of course by no means unknown to the law. Rule 42(b), F.R.Civ.P., provides that "the court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue . . . ." The court has considerable discretion to order separate trials in implementation of the purposes of the rule, namely, to further convenience, avoid delay and prejudice, serve the ends of justice, reduce the expenses of the parties, and save the time of the court. Wright & Miller, *Federal Practice and Procedure*, § 2387–9, pp. 279–81 (1971).

In furtherance of these objectives, separate trials have often been ordered with respect to potentially dispositive issues (e. g., *Rossano v. Blue Plate Foods, Inc.*, 314 F.2d 174 (5th Cir. 1963) (issue of agency in tort case); *J. C. Spach Wagon Works v. Union Paste Co.*, 10 F.R.D. 204 (D.Mass. 1950) (issue of existence of contractual relationship between parties)) and in patent and copyright cases (e. g., *Richmond v. Weiner*, 353 F.2d 41 (9th Cir. 1965) (issue of copyright ownership in infringement case);

*Filtrol Corporation v. Kelleher*, 467 F.2d 242 (9th Cir. 1972) (separate trial in infringement suit on issues of patent infringement and validity); but see *Fischer & Porter Co. v. Haskett*, 51 F.R.D. 305 (E.D.Pa.1970) (separate trial of ownership and validity issues denied in patent infringement suit since no inconsistencies or prejudice in determining both issues at one trial)). Separate trials are particularly common with respect to the issues of damages and liability (e. g., *Kisteneff v. Tiernan*, 514 F.2d 896 (1st Cir. 1975) (assault and battery case); *In re Master Key Antitrust Litigation*, 528 F.2d 5 (2d Cir. 1975) (antitrust case); *Idzojtic v. Pennsylvania Railroad Company*, 456 F.2d 1228 (3d Cir. 1972) (Federal Employers' Liability Act personal injury suit)).[30]

Whatever the specific subject matter, however, it appears to be a *sine qua non* of bifurcation that the various phases or trial segments be sharply defined and that the definition be well understood by the parties and by the Court. See *National Cash Register Co. v. Realty & Industrial Corp.*, 12 F.R.D. 346, 351 (D.N.J.1951); *United States v. International Business Machines Corp.*, 60 F.R.D. 654, 656 (S.D.N.Y. 1973).[31]

The government's proposal, however, suffers from the defect that it is impossible logically or practically to separate out the "background" of this litigation from the other issues. What the government might regard as background, the defendants might justifiably consider to be sub-

---

**29.** In some respects, it exacerbates those problems, for in the absence of an understanding between the parties, it is difficult to envision how it would be determined which part of the government's evidence is "background," and thus to what extent defendants would be required to prepare for, or be restricted with respect to cross examination.

**30.** In one antitrust case, a separate trial was ordered on the issue of whether one branch of the defendant company was a purchaser within the meaning of the Robinson-Patman Act, where there would be no duplication and only slight cumulation of proof of competition if plaintiff was successful, and if it was not, the issues of competition, discrimination, and damages as to that branch would be disposed of.

*Reines Distributors, Inc. v. Admiral Corporation*, 257 F.Supp. 619 (S.D.N.Y.1965). But see, *Reliable Volkswagon Sales & Service Co. v. World-Wide Automobile Corp.*, 34 F.R.D. 134 (D.N.J.1963) (issue of the relevant market so inextricably interwoven with other issues as to preclude a separate trial on the relevant market question); *George Hantscho Co. v. Miehle-Goss-Dexter, Inc.*, 33 F.R.D. 332 (S.D.N.Y.1963) (separate trial on issue of whether agreement on which plaintiff based breach of contract upon violated antitrust laws would not advance orderly disposition of litigation).

**31.** Indeed, significant legal consequences normally ensue at the conclusion of each such segment.

stantive and vice versa, and any "background" trial would be bound to deteriorate very rapidly into a contest of objections as to whether particular material is or is not appropriately addressed during that particular phase. See *LoCicero v. Humble Oil & Refining Co.*, 52 F.R.D. 28, 29 (E.D.La. 1971); *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964); *Eichinger v. Fireman's Fund Insurance Co.*, 20 F.R.D. 204, 208 (D.Neb.1957); cf. *National Commission Report*, pp. 105–106. If proof of that proposition were required, it was supplied by the government's failure to even attempt to define the "background" issues in response to the Court's questions.

Moreover, even if such a separation could somehow be achieved, there would remain the problem of how to treat those issues in light of discovery which will be ongoing after that portion of the trial has been completed. See *Fraiser v. Twentieth Century-Fox Film Corp.*, 119 F.Supp. 495, 497 (D.Neb.1954); *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976).[32]

These problems might be discounted if the truncated proceeding the government has in mind would save trial time or otherwise speed this case along to its disposition.[33] However, neither of these results is likely since the same issues will have to be tried for the same period of time, whether this is done in two phases or in one.[34] The only benefit that might be derived from the

government's proposal is that it would provide the public impression that this case is being tried this Fall. The Court does not regard that as a solid foundation for action.

The pretrial period remaining can be spent far more profitably by cooperation to narrow the issues, definition of material that is either irrelevant or not crucial to the parties' contentions, and speedy conclusion of the process of discovery. That course was set by Pretrial Order No. 12 issued on February 11, 1978, and it is being refined and accelerated by Pretrial Order No. 16 issued this date. Under that order, a very substantial portion of what would normally be trial evidence will already have been resolved and disposed of before that trial ever begins. On the first day of trial, the materials thus generated will be formally admitted into evidence, and the trial itself may then focus on the remaining, truly disputed issues.[35]

For the reasons stated, the Court rejects the suggestion that the "background" phase of this case be tried separately in November of this year or at any other time. However, it is not too early to set a date for the trial of this case in all of its aspects.[36] The procedures detailed above for eliminating largely uncontested or uncontestable issues will be fully completed by next April, and they will be punctuated by the filing of the fourth and final Statements of Contentions and Proof at the end of that month.

32. Would these issues be tried again at the "main" trial in light of further discovery? Would the witnesses be recalled for further "background" evidence? Would their testimony at that juncture be divided into background and substantive evidence? Again, the government has made no effort to address any of these questions beyond the bare suggestion of a background trial.

33. According to Wright & Miller, *supra*, § 2388, p. 283, "the major consideration . . . must be which procedure is more likely to result in a just final disposition of the litigation."

34. Actually the trial of "background" issues is likely to be less protracted if encompassed in the principal trial than if conducted separately. By the time the substantive trial itself begins additional issues may have been resolved with-

out contest by means of the procedures discussed elsewhere herein.

35. When the issues are clearly defined, the parties are able to determine the arguments and evidence that must be presented, and to avoid preparation on spurious issues. *Holcomb v. Aetna Life Ins. Co., supra.* Moreover, the time required for trial is shortened and the Court is assisted in its rulings on relevancy and on admissibility generally. Note, *Federal Civil Procedure—Federal Rule 16—Definition of Issues by the Pre-Trial Judge*, 61 Mich.L.Rev. 1566, 1567 (1963); Note, *The Role of the Court in Simplifying the Triable Issues at a Pre-Trial Conference*, 72 Yale L.J. 383 (1962).

36. Such a trial would not, of course, extend to the question of relief.

Today's pretrial order provides for the submission of pretrial briefs[37] by May 26, 1980, and the holding of a pretrial conference[38]—attended by the Court, the parties, the Magistrate, and the Special Masters— on or about the first week in June 1980. That conference will be devoted *inter alia* to the tasks of formulating the legal and factual issues; scheduling the presentation of evidence;[39] resolving any outstanding disputes based upon the pretrial procedures;[40] and considering any other subjects authorized by Rule 16, F.R.Civ.P., or which will otherwise assist in the orderly and efficient conduct of the trial proceedings. A comprehensive final pretrial order will be issued early in July 1980 (see note 11 *supra*); compliance with that order should be accomplished by August 10, 1980; and the trial may be commenced shortly thereafter. Accordingly, I have determined that the trial of this case shall begin on September 1, 1980.

During the approximately fourteen months remaining prior to trial, the parties, the Court, the Magistrate, and the Special Masters will be called upon to perform many difficult and time-consuming tasks.[41] However, in my judgment the time limits set herein are reasonable, and I expect all concerned to adhere to them.[42]

The alternative to a steady and explicit pretrial schedule is to leave the resolution of many subjects to the trial itself. Such an approach would be bound to cause matters capable of early decision unnecessarily to become contested issues, requiring long parades of witnesses and the introduction of much documentary evidence. Not only would such neglect unnecessarily prolong the trial; it would also result in a significant loss of focus. The resolution prior to trial of collateral, relatively immaterial, or not truly contested matters will permit the parties more acutely to shape their trial preparation; it will leave for the trial itself only genuine issues of material fact and law; and it will therefore favorably affect both the focus and the duration of that trial.

## V

The government has proposed that the parties be required to exchange market share information at an early date. This proposal follows one of the specific recommendations of the National Commission Report. As the Commission explains (pp. 65– 66):

In some complex antitrust cases proof of relevant markets and market structure involves enormous time and expense. A company often has excellent market information concerning the markets in which it operates, and in many cases can readily state market shares with only a small margin of error. Yet an adversary seeking to prove market shares may have to conduct costly, nationwide surveys of all industry members, often in the face of myriad motions for protective orders and other objections by nonparty competitors. Thus, it is often hard for the parties or the judge to get a firm grasp of the case and to understand its dimensions until long after the suit is filed. Even when this process is completed, a plaintiff may get data that is less reliable and complete than the data its adversary had all along.

---

**37.** The contents of the pretrial briefs will be prescribed by a subsequent order, but it is anticipated that they will not unnecessarily duplicate the fourth Statements of Contentions and Proof.

**38.** *Padovani v. Bruchhausen,* 293 F.2d 546 (2d Cir. 1961); *Life Music, Inc. v. Broadcast Music, Inc.,* 31 F.R.D. 3, 5 (S.D.N.Y.1962); *United States v. International Business Machines Corp.,* 68 F.R.D. 358 (S.D.N.Y.1975).

**39.** See *Seminar on Protracted Cases,* 23 F.R.D. 319, 447–48 (1958).

**40.** This may include, *inter alia,* determination of the relevance and materiality of the evidence to be included in the pretrial order.

**41.** A detailed schedule is attached hereto as an Appendix.

**42.** The dates specified herein and in the accompanying pretrial order are subject to modification for good cause shown; however, the Court does not intend to deviate from this schedule unless genuine and substantial grounds are alleged and demonstrated.

When the parties are compelled early in the litigation to exchange market information, they are likely to agree on the relevant markets, and accurate stipulations may be reached with respect to the market shares for the markets so identified. This is true especially in a case such as this where it should be relatively easy to arrive at estimates of the market shares of defendants' principal competitors fully adequate for purposes of the necessary proof.

Defendants assert that inasmuch as this case involves a regulated industry, market share data is not as crucial as in ordinary antitrust litigation, but they nevertheless acknowledge their willingness to participate in such an exchange if the government first explains its concept of the relevant markets and submarkets.[43]

Defendants may well be justified in their claim that, insofar as market share data is concerned, this litigation differs in degree from the ordinary antitrust case. The contentions here are that to the extent that defendants may have occupied a monopoly position with respect to certain aspects of telecommunications, this was accomplished with the permission and indeed at the direction of the Federal Communications Commission; that in areas where this has occurred the extent of their dominance of the market is largely irrelevant; and that FCC regulation and common carrier status render the usual yardsticks by which monopolization and attempts to monopolize are measured less useful in this case. The validity and the scope of this argument will undoubtedly be one central issue in this litigation.

█ Nevertheless, it is clear that, with respect to many of defendants' activities, the extent of competition and market shares is significant. Indeed, defendants' claim that they did not foreclose others from entering any segment of the telecommunications industry in which entry has been permitted by the Federal Communications Commission,[44] suggests that, at a minimum, market share information is relevant to issues relating to these segments, if not to others. Thus, for the reasons discussed above an early exchange of such information is both necessary and desirable.

Defendants further assert that the government has not provided them with any definition of what it considers to be the relevant markets, submarkets, or market shares, and that, until this is done, they cannot be expected to furnish their own information to the government.

█ In its first Statement of Contentions and Proof, the government did provide definitions of the various markets it deems relevant to this case and of defendants' share of those markets. See, e. g., pp. 67–70 (where the government provides such information with respect to telecommunications services), pp. 258–261 (where similar information is related with respect to telecommunications equipment), pp. 426–429 (where market definition and market share information are detailed concerning central office switching and ancillary equipment), and pp. 479–482 (where such information is provided with respect to transmission equipment). While the government's descriptions are not always precise, particularly with respect to the shares of some of these markets occupied by defendants' competitors, they constitute a sufficient expression of the government's views on the subject to call for a response from the defendants. See *United States v. Pabst Brewing Co.*, 384 U.S. 546, 549, 562, 86 S.Ct. 1665, 16 L.Ed.2d 765 (1966); *United States v. Philadelphia National Bank*, 374 U.S. 321, 360 n. 37, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963);

---

**43.** They also assert that it will be difficult to provide market share data because of constantly shifting regulatory policies (Memorandum, p. 23), but that claim is not persuasive. To be sure, these policies may have shifted from time to time, but apparently this has not occurred as

frequently or drastically as to render the market share definition job as difficult and complex as defendants suggest.

**44.** See defendants' first Statement of Contentions and Proof, pp. 207–12.

*United States v. du Pont Co.,* 351 U.S. 377, 395, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); *Times-Picayune v. United States,* 345 U.S. 594, 611, 73 S.Ct. 872, 97 L.Ed. 1277 (1953).

In order to advance the market data exchange process, it is therefore appropriate at this time to require defendants to provide to the government their estimates and understandings of the relevant markets, who they perceive to be their principal competitors, the competitive products of these competitors, and the market shares of these competitors. See *United States v. Amax, Inc.,* 402 F.Supp. 956 (D.Conn.1975)). Such information [45] shall be provided by August 6, 1979. In the event that defendants require additional information from the government as to its definitions of the various markets and market shares, they may seek to elicit such information by submitting questions on or prior to that date. The government shall then furnish appropriate responses (and supporting documents) by August 20, 1979. Defendants' disclosure of market share information concerning remaining matters will be due on September 17, 1979. In the event that there is a disagreement as to the need of either party for additional information, it shall be resolved by order of the Magistrate on or before October 8, 1979.

Full and complete information by both parties concerning the relevant markets, defendants' share therein, and the market shares of their competitors, shall in any event be provided not later than October 22, 1979. That information shall be compiled into one stipulation, under the supervision of the Magistrate, and filed with the Court by November 3, 1979. Except to the extent that a party specifically expresses its intention to contest market data and identifies the precise areas of contest, such document shall conclusively define the relevant markets and defendants' and their competitors' shares therein for purposes of this litigation and shall be admitted into evidence at the beginning of the trial.

## VI

The government has suggested that the Court order the parties to reduce the testimony of their witnesses to writing and to refuse to permit them to testify orally except on cross examination.

In view of the admonition in Rule 43(a) of the Federal Rules of Civil Procedure that "[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules[,]" such a blanket order would be unauthorized.[46] The Court has found no provision in the Rules to contradict the express mandate of Rule 43(a). The government's attempt to invoke the admonition of Rule 1, F.R.Civ.P., that the Rules "be construed to secure the just, speedy, and inexpensive determination of every action" falls short of being such a provision, for that general statement can hardly be regarded as overriding the specific direction of Rule 43(a) and the historic practice in the courts of this nation.[47]

Moreover, the demeanor of witnesses bears importantly on their credibility,

---

**45.** Information concerning the number and size of less substantial competitors and the principal documents on which all the estimates are based shall likewise be included in the submission.

**46.** According to the Notes of the Advisory Committee, in addition to restating the substance of the procedures applicable to actions at common law, in equity, and in admiralty, the quoted portion of the Rule was specifically designed to abolish in patent and trademark actions the former practice of proceeding with respect to certain testimony by way of affidavit in lieu of live testimony. See *Lebeck v. William A. Jarvis, Inc.,* 250 F.2d 285, 294 (3rd Cir. 1957); 5 *Moore's Federal Practice* ¶ 43.03 (1978); Wright & Miller, *supra,* § 2407.

**47.** The government's reference to the practice of administrative agencies is not persuasive. Judicial tribunals, with their special historic and constitutional status, are not administrative agencies, and the courts must be vigilant not to blur the lines between the two.

and to the extent that credibility is involved, personal testimony is essential (see *Government of Virgin Islands v. Aquino,* 378 F.2d 540, 547–48 (3rd Cir. 1967); *Schoenbaum v. Firstbrook,* 405 F.2d 215, 218 (2d Cir. 1968); *United States v. Perry,* 431 F.2d 1020, 1022 (9th Cir. 1970); *United States v. Yellow Cab Co.,* 338 U.S. 338, 341, 70 S.Ct. 177, 94 L.Ed. 150 (1949); *United States v. Nugent,* 100 F.2d 215, 217 (6th Cir. 1938)). In any event, the Court is unlikely to be able to focus on the crucial issues and the significant exhibits without explanatory testimony in live form.

At the same time, both parties have expressed an interest in reducing some testimony[48] to writing in advance of trial and submitting it to the Court and to opposing counsel for purposes of trial preparation and cross examination. In that manner, witnesses will still be allowed to testify in open court, as envisioned generally by Rule 43, but their cross examination will not be unduly complicated or delayed by the inability of opposing counsel to prepare for it. See generally *United States v. Bender,* 218 F.2d 869 (7th Cir. 1955); *United States v. Stoehr,* 100 F.Supp. 143 (D.Pa.1957).

Beyond that, defendants have stated in their Memorandum of May 3, 1979, that they are willing to negotiate an agreement with the government for the submission of the written testimony of some witnesses, who would later be subject to cross, but not direct, examination.

■■■■ The Court expects that pursuant to that representation the parties will attempt mutually to agree on a procedure for the presentation of evidence which will avoid the needless consumption of trial time[49] that would be caused by a practice of a rote reading into the record of material which could be absorbed much more quickly and with equal effectiveness if presented in written form. There is surely no need for unduly extending the trial in a complex case such as this—which will be protracted in any event—by lengthy, formal testimony where other means of presentation of the evidence will be equally effective.[50]

■■■■ The Federal Rules of Evidence grant substantial discretion to the Court with respect to the exclusion of needlessly repetitive testimony, whether written or oral. Rule 611(a) provides in pertinent part that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of truth [and] avoid needless consumption of time . . . ." Likewise, Rule 403 provides that evidence, though relevant, "may be excluded if its probative value is substantially outweighed by . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Alper,* 449 F.2d 1223 (3rd Cir. 1971); *United States v. Johnson,* 496 F.2d 1131 (5th Cir. 1974); *Continental Baking Co. v. United States,* 281 F.2d 137 (6th Cir. 1960); *SMC Corp. v. Xerox Corp.,* 77 F.R.D. 10 (D.Conn.1977). The Court will not hesitate to use these powers to their fullest extent, consistently with the need for a fair trial and the effective presentation and explanation of material evidence.

Accordingly, the pretrial order to be issued following the April 1980 pretrial conference will specify in detail when such

---

**48.** Presumably the bulk of the testimony so presented will be that of experts. See *Manual for Complex Litigation* § 2.60; *National Commission Report,* p. 10; *Seminar on Protracted Cases,* 23 F.R.D. at 428.

**49.** As the *Manual for Complex Litigation* explains (§ 2.60), early disclosure of proposed expert testimony helps, among other things,

"to discourage the use of multiple expert witnesses by one party where their testimony is simply cumulative."

**50.** Evidence will, of course, be available for appellate review regardless of the manner in which it is introduced into the record.

agreements, and written direct testimony of particular witnesses pursuant thereto, shall be filed. The Court may at that time direct that additional testimony be reduced to writing. The parties will be expected to approach the subject of written testimony, as all others, in good faith and to present the evidence in a way that will not unnecessarily prolong this trial beyond the duration that the massive nature of this litigation necessarily requires.

There is no doubt but that the stakes for all concerned are high, and they will be provided with latitude commensurate with the magnitude of these stakes and the intricacies of the issues. At the same time, it may not be too early to advise the parties that the Court does not expect the trial of this case to become a textbook example of the impotence of the judicial process to deal with massive and complex litigation. Fortunately, the parties have thus far displayed a reasonable and cooperative attitude that augurs well for the future course of this litigation. With their assistance, this case will be tried both fairly and expeditiously.

Appendix to follow.

# Appendix

## PRETRIAL SCHEDULE

| Date | Stipulations | Judicial Notice | Market Data | Requests for Admissions | Conferences and Orders |
|---|---|---|---|---|---|
| June 22, 1979 | Undisputed language deemed stipulated | | | | |
| July 9 | Acceptance or rejection of language changes | | | | |
| July 23 | Govt. report on matters on which it will not stipulate | Designation by parties of judicial notice material | | | |
| August 6 | Acceptance or rejection of further language changes | | Defendants provide data and request Govt. specification | | |
| August 20 | Parties report on (a) why opponent's Statement incorrect and (b) what further discovery needed | Responses and objections to material | Govt. provides further specification of market data | | |
| September 17 | Parties provide discovery or reasons why not | Judicial notice material filed with Court | Parties provide final market data | | |
| October 8 | | | Magistrate rules on disputes | | |
| October 15 | Magistrate and Masters rule on reasons for not providing discovery. | | | | |
| October 22 | Stipulations filed with the Court | | Final market data provided | | |
| October 29 | | | | | Conference with Special Masters |
| November 3 | | | Market data filed with the Court | | |
| November 26 | | | | | Masters file formal stipulations, good faith reports, statement of contested issues |
| December 31 | | | | Requests for admissions filed | Third Statement of Contentions and Proof |
| February 18, 1980 | | | | Requests admitted or denied | |
| March 3 | | | | Admissions and documents filed; applications to Magistrate to require admissions | |
| March 24 | | | | Magistrate rules on applications | |
| April 1 | | | | Remaining admissions filed with the Court | Discovery closed |
| April 28 | | | | | Fourth Statement of Contentions and Proof |
| May 26 | | | | | Pretrial Briefs |
| Early June | | | | | Pretrial Conference |
| Early July | | | | | Pretrial Order |
| August 10 | | | | | Trial briefs; identification of witnesses, marking of exhibits, filing of written testimony, exchanges of documents |
| September 1 | | | | | Trial Begins |